United States District Court
Southern District of Texas
**ENTERED**
February 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 7:20-cv-00242 |
| 38.307 ACRES OF LAND, MORE OR | § | |
| LESS; CASCADE REAL ESTATE | § | |
| OPERATING, L.P., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Defendant Cascade Real Estate Operating, LP's Brief on Just Compensation and Anticipated Evidence for Requested Jury Trial;"[1] Defendant Cascade Real Estate Operating, LP's ("Cascade") "*Daubert* Challenge and Motion to Exculde [sic] Testimony of Steve Robinson;"[2] "United States of America's Brief on Just Compensation;"[3] "United States of America's Response to Defendant's Daubert Challenge and Motion to Exclude Testimony of Steve Robinson;"[4] "United States Motion to Exclude, in Part, Expert Testimony of Matthew G. White & Joshua M. Korman Regarding Tract TGV-MCS-3003;"[5] "Defendant Cascade Real Estate Operating, LP's Response to United States' Motion to Exclude, in Part, Expert Testimony of Matthew G. White and Joshua M. Korman Regarding Tract RGV-MCS-3003;"[6] and "United States' Reply to Defendant's Response to USA's Motion to Exclude, in Part, Expert Testimony of

---

[1] Dkt. No. 29.
[2] Dkt. No. 30.
[3] Dkt. No. 31.
[4] Dkt. No. 32.
[5] Dkt. No. 33.
[6] Dkt. No. 35.

Matthew G. White & Joshua M. Korman Regarding Tract RGV-MCS-3003."[7] After considering

the motion, record, and relevant authorities, the Court **DENIES** Defendant's motion[8] and **DENIES**

Plaintiff's motion.[9]

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This is an eminent domain case brought under the Declaration of Taking Act[10] concerning

Tracts RGV-MCS-2219 and RGV-MCS-3003 as described in the United States' Schedule C and

D.[11] The two tracts are located within and adjacent to the Sharyland Plantation which encompasses

some 6,000+ acres which has been developed into a master-planned, multi-use community.[12] In

2019 over 3,500 acres, composed of various tracts, of the undeveloped land was sold to

Defendant.[13] Tract RGV-MCS-2219 is a 4.008-acre tract[14] and Tract RGV-MCS-3003 is a 34.299-

acre tract both within the 3,500 acreage.[15] This Tract designation is Plaintiff's manner of

identifying the land it has taken. There is no dispute that Cascade Real Estate Operating, L.P. is

the only interested party to the tracts.[16] However, each party objects to the other's experts' opinions

as to the valuation of Tract 3003.[17]

The motions are ripe for consideration. The Court turns to its analysis.

---

[7] Dkt. No. 36.
[8] Dkt. No. 30.
[9] Dkt. No. 33.
[10] Dkt. No. 1-1 at 2.
[11] *Id.* at 5-34
[12] Dkt. No. 31 at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] Dkt. No. 1-1 at 41.
[17] Dkt. No. 27.

## II. Discussion

### a. Legal Standards

#### 1. Just Compensation

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[18] Compensation is to be just to the landowner and to the public which must pay for the condemnation by eminent domain.[19] "Just compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[20] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'"[21] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[22] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[23] The best evidence is "sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking."[24] Other evidence of fair market value can come

---

[18] U.S. CONST. amend. V (the Takings Clause).
[19] *Bauman v. Ross*, 167 U.S. 548, 574 (1897) (quoting *Searl v. Sch. Dist. No. 2*, 133 U.S. 553, 562 (1890) (Fuller, C.J.)).
[20] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).
[21] *United States v. 320.0 Acres of Land, more or less in Monroe Cnty.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).
[22] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").
[23] *320.0 Acres of Land*, 605 F.2d at 798; *accord United States v. 24.48 Acres of Land*, 812 F.2d 216, 218 (5th Cir. 1987) ("[T]he best evidence of market value is comparable sales.").
[24] *United States v. 8.41 Acres of Land, more or less, Situated in Orange Cnty.*, 680 F.2d 388, 395 (5th Cir. 1982)

from evidence of other comparable sales and from expert testimony as to the value of the subject property.[25] Appraisals are conventional and acceptable evidence.[26]

"In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed."[27] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous use."[28] When a condemnee[29] attempts to claim that the highest and best use for the property taken is something other than what the property is currently used for, the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that "there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[30] Evidence of highest and best use that is not credible, for example an assertion that residential development is the highest and best use when the property in question is next to an airfield and has poor access and stagnant population growth, should be rejected.[31] The governing rule is that if "a proffered potential use is not reasonably practicable or probable, so that no reasonably minded trier of fact faithfully applying

---

[25] *320.0 Acres*, 605 F.2d at 798 & n.64.

[26] *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 632 (1961); *see generally Powell v. Tosh*, 942 F. Supp. 2d 678, 688 (W.D. Ky. 2013) ("The USPAP [Uniform Standards of Professional Appraisal Practice] . . . represents the prevailing professional standards for real property appraisal . . . .").

[27] *8.41 Acres of Land*, 680 F.2d at 394; *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").

[28] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).

[29] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").

[30] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land more or less, Situated in Jefferson Par.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").

[31] *United States v. 158.24 Acres of Land, more or less, in Bee Cnty.*, 515 F.2d 230, 233 (5th Cir. 1975).

the law could find that it represents an element of fair market value," the evidence will not be considered.[32]

When a taking acquires only a portion of the condemnee's property, the Fifth Circuit "requires the exclusive use of the before-and-after method of valuation."[33] This method "computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract . . . [e]quivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking."[34] In simpler terms, "[u]nder the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled."[35] In ascertaining what constitutes the parent tract or larger parcel, "[t]hree factors are particularly helpful in ascertaining whether property taken is part of a single, larger tract: physical contiguity, unity of ownership, and unity of use," with an integrated use such as pastureland serving as key evidence.[36]

Compensation in a partial taking may be offset by special benefits, "those which are direct and peculiar to the particular property" but not from general benefits "which do not offset recovery."[37] The Fifth Circuit has provided that:

---

[32] *320.0 Acres of Land*, 605 F.2d at 818.

[33] *United States v. 8.41 Acres of Land, more or less, Situated in Orange Cnty.*, 680 F.2d 388, 392 n.5 (5th Cir. 1982); *cf. United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 632 (1961) ("[T]he court adopted an acceptable method of appraisal, indeed the conventional method, in valuing what was acquired by the Government by taking the difference between the value of the property before and after the Government's easement was imposed."); *United States v. 4.27 Acres of Land*, 271 F. App'x 424, 425 (5th Cir. 2008) ("The normal procedure for awarding compensation for an easement is to determine the highest and best use of the entire acreage within the property lines of the parent tract and then to calculate the difference between the market value of the tract before and after the taking.").

[34] *8.41 Acres of Land*, 680 F.2d at 392 n.5 (quoting *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969)).

[35] *United States v. 12.94 Acres of Land in the Cnty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).

[36] *8.41 Acres of Land*, 680 F.2d at 393.

[37] *United States v. Trout*, 386 F.2d 216, 221-222 (5th Cir. 1967) (quoting *United States v. 2,477.79 Acres of Land, More or Less, Situate in Bell County, Texas*, 259 F.2d 23 (5th Cir. 1958).

[t]he most satisfactory distinction between general and specific benefits is that the general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Ordinarily the foregoing test is a satisfactory one, though sometimes difficult to apply. In other words, the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways.[38]

### 2. Expert Opinion Admissibility

"[T]he Federal Rules of Evidence control the admission of expert testimony."[39] The Rules and judicial scrutiny extend to all experts, whether scientific or otherwise.[40] "[P]reliminary factual and legal issues are the Court's responsibility under [Federal Rule of Civil Procedure 71.1(h)], whether trial is had before a jury or a commission."[41] When an expert's "factual basis, data, principles, methods, or their application" are sufficiently called into question,[42] the Court must undertake a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[43] "The gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1. While the jury tries issues of valuation, the trial judge must screen the proffered" evidence.[44] The Court must first determine, under Federal Rules of Evidence 104(a) and 402, that the expert's proposed testimony is relevant and would

---

[38] *2,477.79 Acres of Land*, 259 F.2d at 28 (quoting 3 Nichols on Eminent Domain, 3d Ed., 45, § 8.6203).

[39] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002).

[40] *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580–81 (5th Cir. 2001) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

[41] *United States v. 320.0 Acres of Land, more or less in Monroe Cty.*, 605 F.2d 762, 827 (5th Cir. 1979).

[42] *Rodriguez*, 242 F.3d at 581 (quotation omitted).

[43] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–93 (1993).

[44] *United States v. 33.92356 Acres of Land, more or less, in Vega Baja*, 585 F.3d 1, 8 (1st Cir. 2009) (citing *320.0 Acres of Land*, 605 F.2d at 815)); *see United States v. Reynolds*, 397 U.S. 14, 20 (1970) ("[T]he sweeping language of the final sentence of the Rule [71.1] discloses a clear intent to give the district judge a role in condemnation proceedings much broader than he occupies in a conventional jury trial.").

assist with determining a fact at issue.[45] Evidence that is not both is not admissible.[46] "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. Similarly, low probative value, or a total lack of it, will render proposed expert testimony unhelpful and, therefore, inadmissible under Federal Rule of Evidence 702."[47] The Court scrutinizes proposed expert testimony more searchingly than lay witness testimony for its pertinency and potential prejudice.[48]

Additionally, "[u]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[49] "Experts qualified by knowledge, skill, experience, training or education may present opinion testimony to the jury"[50] only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

---

[45] *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir. 2003)) (rejecting conclusory testimony as irrelevant); *cf. United States v. Gluk*, 831 F.3d 608, 615 (5th Cir. 2016) (reversing the exclusion of SEC investigators' evidence); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (alteration and quotation omitted) ("The contradictions coupled with the lack of support for the statements take them out of the realm of substantive evidence. In the context of admissibility of expert testimony, this court has noted that if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."); *Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir. 1995) (cleaned up) ("To qualify as an expert, the witness's testimony must both rest on a reliable foundation and be relevant to the task at hand.").

[46] *Perez v. Tex. Dep't of Crim. Just., Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004) (citing Fed. R. Evid. 401).

[47] 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 702.02[5] (Mark S. Brodin, ed., 2d ed. 1997) (cleaned up), *quoted in Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993); *see EEOC v. U-Haul Co. of Tex.*, No. 4:04-cv-3788, 2005 WL 2860987, at *2 (S.D. Tex. Nov. 1, 2005) (Hittner, J.) (quoting *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000)) ("Expert testimony assists the trier-of-fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of-fact understand the evidence or determine a fact issue. When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony.").

[48] *Rule 702 of the Federal Rules of Evidence Is Sound; It Should not be Amended*, 138 F.R.D. 631, 632 (1991) (Weinstein, J.), *quoted in Daubert*, 509 U.S. at 595. *But see Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury.").

[49] *Daubert*, 509 U.S. at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotation omitted) (holding the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

[50] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quotation omitted). *But see Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623–24 (5th Cir. 2018) (cleaned up) ("Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.").

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[51] The proponent of the proffered expert testimony "must prove by a preponderance of the evidence that the testimony is reliable" and cannot rest on generic assurances.[52] Under the first element, "the existence of sufficient facts . . . is in all instances mandatory."[53] Unsubstantiated factual assertions will bar expert testimony,[54] as will "altered facts and speculation designed to bolster [the proponent's] position."[55] Expert opinions that are unsupported, self-contradicted, or assumptive are to be excluded.[56] However, the proponent "need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable."[57] The Court should "approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions."[58] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[59] Indeed, the Fifth Circuit has cautioned against transforming a motion to exclude an expert into a trial on the merits, because the factfinder may be entitled to accept or reject an expert's testimony *including* by judging whether the predicate facts on which an expert relied are accurate.[60] In short,

---

[51] *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (quoting FED. R. EVID. 702).
[52] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).
[53] *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).
[54] *Id.* at 319 & n.4.
[55] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (citing *MGM Well Servs. v. Mega Lift Sys.*, No. 4:05-cv-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (Atlas, J.)) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him.").
[56] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).
[57] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).
[58] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).
[59] *United States v. 14.38 Acres of Land, more or less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo*, 826 F.2d at 422); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.").
[60] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

experts may rely on disputed facts,[61] but not unsubstantiated assertions. Cross-examination and presentation of competing evidence are traditionally sufficient to challenge an expert opinion, rather than exclusion for inadmissibility.[62] "It is the role of the adversarial system, not the court, to highlight weak evidence."[63]

Under the second and third elements for assessing expert evidence, "expert testimony 'must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.'"[64] "Under *Daubert,* '*any* step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."[65] To test reliability, the Court assesses the intellectual rigor of the proposed expert testimony,[66] which must be validated by an independent and objective source beyond the expert's assurances,[67] and the Court "should ensure that the [expert] opinion comports with applicable professional standards

---

[61] *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, No. 4:15-cv-1307, 2017 WL 3142444, at *6 (S.D. Tex. July 25, 2017) (Rosenthal, C.J.) (citing *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (per curiam) and *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) and *Pipitone*, 288 F.3d at 249–50) ("[I]t is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject."), *aff'd*, 564 U.S. 91 (2011).

[62] *See MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 596 (1993)); *see 14.38 Acres of Land*, 80 F.3d at 1078 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").

[63] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

[64] *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 662 (E.D. La. 2016) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).

[65] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 n.10 (5th Cir. 1998) (omission in original) (emphasis deleted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

[66] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[67] *Brown v. Ill. Cent. R.R.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (alteration and quotation omitted) ("But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.").

outside the courtroom and that it will have a reliable basis in the knowledge and experience of [the] discipline."[68] However, an expert report or opinion need not be in lockstep with the common or prevailing standard to be admissible.[69] "Certain more specific factors, such as testing, peer review, error rates, and 'acceptability' in the relevant scientific community . . . might prove helpful in determining the reliability of a particular scientific 'theory or technique.'"[70] Reliance on studies that do not support a contention, cherry-picked data, or a dubious methodology may be grounds to reject expert testimony.[71] Additionally, the Court should exclude expert evidence if the witness is not qualified in a particular field or subject,[72] but an expert witness need not be highly credentialed or specially qualified to offer an expert opinion to the factfinder.[73] The Court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered" to be admissible,[74] but there is no definite formula for determining whether expert testimony is reliable

---

[68] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) (second alteration in original) (quotation omitted); *see McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) (cleaned up) (holding that courts "look to the basis of the expert's opinion, and not the bare opinion alone. A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness."); *cf. Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 621 (1974) ("[T]he District Court's concern for the smallness of the sample presented by the 13-member Panel was also well founded."); *accord Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010) (Smith, J.) (collecting cases).

[69] *Whitehouse Hotel LP v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) (rejecting the argument that compliance with uniform published professional standards goes to admissibility rather than credibility); *see Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993) ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility."); *Hardy v. United States*, 141 Fed. Cl. 1, 32 (2018) ("The Yellow Book [Uniform Appraisal Standards for Federal Land Acquisitions] applies only to appraisers hired by the federal government for condemnation purposes; it is not mandatory with respect to appraisers not hired by the government.").

[70] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993)).

[71] *Burst v. Shell Oil Co.*, 650 F. App'x 170, 174 (5th Cir. 2016) (per curiam).

[72] *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (affirming exclusion of expert evidence because "Moore is not a tire expert. He has never been employed in any capacity dealing with the design or manufacture of tires. He has never published any articles regarding tires nor has he ever examined a tire professionally prior to this litigation. His only experience with tires is as a consumer.").

[73] *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199–200 (5th Cir. 2016); *see Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 624–25 (5th Cir. 2018) (rejecting the argument that expert qualifications must be narrowly tailored to the matter at hand before an expert is qualified to testify); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) (per curiam) (quotations omitted) ("A lack of specialization should generally go to the weight of the evidence rather than its admissibility, and an expert witness is not strictly confined to his area of practice, but may testify concerning related applications.").

[74] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

or unreliable "and the court must judge admissibility based on the particular facts of the case."[75] The test is, at bottom, "a flexible one,"[76] so "[t]rial judges retain 'broad latitude' both in deciding how to determine whether an expert's testimony is reliable, and ultimately, whether the testimony is, in fact, reliable."[77]

The Court is particularly hesitant to exclude a defendant landowner's expert evidence in eminent domain cases because the Fifth Circuit has instructed:

> The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. . . . Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.[78]

"[I]f suitability for a particular use might reasonably affect fair market value in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law then evidence pertaining to that use must be admitted for consideration by the trier

---

[75] *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010).

[76] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993).

[77] *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 142); *accord St. Martin v. Mobil Expl. & Producing U.S. Inc.*, 224 F.3d 402, 406 (5th Cir. 2000) (quoting *Watkins v. Telsmith Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)) ("District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous.").

[78] *United States v. 14.38 Acres of Land, more or less situated in Leflore Cnty.*, 80 F.3d 1074, 1077–78 (5th Cir. 1996) (quoting *United States v. 68.94 Acres of Land, more or less, situate in Kent Cnty.*, 918 F.2d 389, 393 (3d Cir. 1990)).

of fact."[79] Nevertheless, "[c]onsiderations that may not reasonably be held to affect market value are excluded."[80]

### b. Analysis

### 1. *Cascade's Motion to Exclude Testimony of Steve Robinson*

Defendant Cascade contends that the opinions of Plaintiff's expert, Steve Robinson ("Mr. Robinson"), are unreliable and should be excluded because:

> Mr. Robinson utilized an improper appraisal methodology to determine that a portion of Cascade's remainder property increased in value as a result of the U.S.'s taking. Mr. Robinson's determination that the Border wall enhanced Cascade's remainder property is a misapplication of the well-established rule of valuation that, in a partial takings case, a landowner's recovery may be offset by any special benefits to the remainder as a result of the improvements to be constructed on the part taken. Construction of the Border Wall will not confer a special benefit on Cascade's remainder property and Mr. Robinson's attempt to reduce the compensation owed Cascade is invalid.[81]

In response to Cascade's motion, the United States argues that

> [a]s detailed in his expert report and discussed during his deposition, Mr. Robinson did not find that the construction of the border wall provided a special benefit or that it caused a shift in the remaining property's highest and best use. Rather, he determined that the taking removed the lowest value land from the larger parcel and therefore the ratio of highly productive land increased because the denominator (total acreage) decreased. This ultimately resulted in the remining property constituting a more efficient farm which thereby increased the value per acre.[82]

As mentioned previously, the United States condemned 38.307 acres of Cascade's property in two tracts, RGV-MCS-2219 and RGV-MCS-3003. Cascade's motion raises no issues with Mr.

---

[79] *United States v. 320.0 Acres of Land, more or less in Monroe Cnty.*, 605 F.2d 762, 817 (5th Cir. 1979); *see id.* at 815 ("[I]f the landowner's evidence is sufficient to show that a prospective use is feasible and reasonably probable, the landowner is then entitled to have that evidence considered by the jury (or the commission)."); *McCandless v. United States*, 298 U.S. 342, 346 (1936) ("An offer of proof cannot be denied as remote or speculative because it does not cover every fact necessary to prove the issue.").
[80] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quoting *Olson v. United States*, 292 U.S. 246, 256 (1934)).
[81] Dkt. No. 30 at 2.
[82] Dkt. No. 32 at 4.

Robinson's valuation of Tract RGV-MCS-2219.[83] Thus, only Mr. Robinson's assessment of RGV-MCS-3003 will be considered.

Mr. Robinson's appraisal begins by assessing the property before the government acquisition. As mentioned previously, Defendant owns 3,500+ acres in the area. After considering unity of ownership, physical unity and unity of use, "Mr. Robinson concluded that despite the lack of contiguity, the tracts have physical proximity, which gives the 3,500+ acres physical unity."[84] However, he clarified that while most of the property could be utilized for a mixed-use development, one exception included a 341.731-acre tract within the boundaries of the Lower Rio Grande Flood Control Project administered by the IBWC.[85] This area contains Tract RGV-MCS-3003. Because of the nature of the land, Mr. Robinson assessed the highest and best use of the property as irrigated farmland.[86] This evaluation led him to determine that the parent parcel contained 341.731 acres.[87] Because Mr. Robinson concluded that the highest and best use of the property is irrigated farmland, he evaluated the soil and irrigation of the larger parcel.[88] Of the total 341.731 acres, Mr. Robinson found 251.30 acres to be tillable and 90.43 acres to be outage (non-tillable).[89] Mr. Robinson then used a comprehensive ratio analysis to "convert the subject's soils to equivalent acreage for Class I Soils – Non-Floodplain (100%), which is the prime irrigated soil in the Rio Grande Valley."[90] In other words, the different types of soil are placed in a hierarchy with Class 1 Soils – Non-Floodplain at the top constituting 100% in the ratio and outage at the bottom constituting 15%.[91] The specific soil composition of the parent parcel is then applied to

---

[83] Dkt. No. 30.
[84] Dkt. No. 31 at 10.
[85] *Id.* at 11.
[86] Dkt. No. 31-8 at 44.
[87] *Id.* at 48.
[88] *Id.* at 30-35.
[89] *Id.* at 34.
[90] *Id.* at 33.
[91] *Id.*

this ratio analysis.[92] This resulted in a 58.3% equivalency ratio.[93] Mr. Robinson further found the parent parcel to have 100% irrigation.[94] Mr. Robinson then took these numbers and compared them to eight comparable sales.[95] By adjusting the percentages of soil equivalency ratio and irrigation along with acreage, Mr. Robinson was able to conclude that in comparison to the comparable sales, the market value of a parcel of land containing 341.731 acres with 58.3% soil equivalency ratio and 100% irrigation would be $3,525 per acre or $1,204,602 for the entire 341.731 acres.[96]

After the taking, Mr. Robinson divided the remainder property into a northern and southern remainder.[97] The Northern remainder consists of a small strip of land on the north side of the taking comprising 2.347 acres.[98] The southern remainder consists of a 305.085-acre parcel to the south of the taking.[99] The northern remainder was concluded to be an uneconomic remnant with a market value of $0.00.[100] However, Defendant's motion does not raise any issues with Mr. Robinson's conclusion that the remainder should be split into northern and southern remainders, nor do they raise any issue with the valuation of the northern remainder.[101] Rather, their argument focuses on the valuation of the southern remainder.[102]

Like the parent parcel, Mr. Robinson assessed the highest and best use of the southern remainder as irrigated farmland.[103] Because the highest and best use of the property as irrigated farmland stayed the same, Mr. Robinson again evaluated the soil and irrigation of the southern

---

[92] *Id.* at 34.
[93] *Id.*
[94] *Id.*
[95] *Id.* at 49-82.
[96] *Id.* at 81.
[97] Dkt. No. 31 at 18.
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] Dkt. No. 30.
[102] *Id.* at 7 ("As such, Mr. Robinson's opinion regarding the value of Cascade's southern remainder property is unreliable and should be excluded from the trial of this cause.").
[103] Dkt. No. 31-8 at 87.

remainder.[104] Here, Mr. Robinson found that the amount of tillable acreage remained the same at

251.30-acres and outage for the southern remainder diminished to 53.78-acres.[105] This reflected a

finding that the Subject Property was fully considered as outage.[106] Because the amount of tillable

acreage remained the same, but the total acreage of the southern remainder after the taking is now

305.09 acres, the ratio of tillable land to total acreage is higher.[107] Mr. Robinson then calculated

the equivalency ratio for the soil in the southern remainder at 63.5%.[108] Further, Mr. Robinson

found the southern remainder maintained 100% irrigation.[109] These percentages and the acreage

of the southern remainder are then applied to the same comparable sales.[110] Mr. Robinson was able

to conclude that in comparison to the comparable sales, the market value of a parcel of land

containing 305.09 acres with 63.5% soil equivalency ratio and 100% irrigation would be $3,750

per acre or $1,144,069 for the entire 305.09 acres.[111]

Then by subtracting the fair market value of what remains after the taking, from the fair

market value of the parent parcel before the taking, Mr. Robinson was able to come to a difference

of $60,533.00 as value for tract RGV-MCS-3003.[112]

Mr. Robinson's assessment of the property does not assert that the property has been

enhanced by the construction of the border wall as Defendant asserts. Rather, Mr. Robinson's

analysis considers the same conditions in the larger parcel as are considered in the southern

remainder. As mentioned above, "[u]nder the before-and-after rule, the value of the entire tract is

found prior to the taking, the value of the remainder is evaluated after the taking, and the difference

---

[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.* at 88.
[111] *Id.*
[112] *Id.* at 91.

equals the amount to which the owner is entitled."[113] While the price per acre increases in the southern remainder after the taking, it is only a result of the amount of tillable land remaining the same, while the acreage decreases. It is not the result of the construction of the border wall as an argued enhancement, but rather the particularities inherent in the land itself; ones that existed prior to and after the taking. To find otherwise would render a faithful before and after analysis by the appraiser impossible because he would be forced to find, in the after portion of the analysis, that the remainder was worth less per acre than market value suggested.

The Court finds the United States' expert opinion sufficient to be submitted to the jury for consideration. Mr. Robinson has provided ample explanation for the Court to conclude that his opinion is reliable and admissible. Accordingly, the Court hereby **DENIES** Cascade's "*Daubert* Challenge and Motion to Exculde [sic] Testimony of Steve Robinson,"[114]

### 2. *United States' Motion to Exclude, in Part, Expert Testimony of Matthew G. White & Joshua M. Korman*

Plaintiff United States seeks to exclude a portion of the opinions of Defendant's experts' (Matthew G. White ("Mr. White") & Joshua M. Korman ("Mr. Korman")) because Plaintiff argues that the experts failed to conduct a larger parcel analysis.[115] Ironically, Plaintiff's own expert, while acknowledging that the 3,500 acres have unity of ownership and are contiguous, used a smaller parent tract claiming it was farmland, rather than mixed-use land. Defendant's experts have similarly taken a smaller portion of the 3,500 acres, to include the 341.731 acres that Plaintiff used but also including the remainder of the acreage comprising this section of land. Thus, Plaintiff's complaint is not so much that something less than 3,500 was used but rather that Defendant did

---

[113] *United States v. 12.94 Acres of Land in the Cnty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).
[114] Dkt. No. 30.
[115] Dkt. No. 33 at 6.

not use the same smaller parent tract and that Defendant's experts do not explain to Plaintiff's

satisfaction why it chose the parent tract as it did. Plaintiff nonetheless asserts that

> [b]oth appraisers agree that the 3500-acre development has unity of title (Defendant owns it all). They also agree that the 3500-acre property has the same highest and best use; mixed used development. Finally, the map that they both used [] shows that the vast majority of Defendant's planned development is contiguous. However, both men ultimately determine that a smaller portion of the 3500-acre tract constituted the larger parcel for purposes of their valuation.[116]

More specifically, Plaintiff asserts that

> Mr. White's report summary asserts that [t]he subject property is comprised of ± 576.05 acre tract of net land area located along the east of South Shary Road and west line of South Bentsen Road, McAllen, Hidalgo County, Texas; as part of a larger ± 3,678.70 acre master planned mixed-use development. However, his report does not include any analysis regarding the manner in which he came to that determination.[117]

Additionally, Plaintiff asserts that

> Mr. Korman's report summary asserts that the 583.845-acre tract 'is generally south of Old Military Parkway along the east side of South Shary Road, the west side of South Bentsen Road, and north of the Rio Grande River in McAllen Hidalgo County, Texas.' In a section entitled 'Larger Parcel,' Mr. Korman stated that '[w]e have determined that the Larger Parcel consists of 583.845 acres of land out [sic]. The 583.845 acres of land demonstrates a unity of ownership and unity of highest and best use.' However, there is no analysis regarding how this determination was made in light of Defendant's 3,500+ acre master-planned development.[118]

Defendant's response argues that Mr. White and Mr. Korman both "testified at length

regarding their understanding and consideration of the larger parcel factors, including unity of use,

unity of ownership, and contiguity.[119]

---

[116] *Id.*
[117] *Id.* at 7.
[118] *Id.* at 9.
[119] Dkt. No. 35 at 9.

i.   *Matthew G. White*

Mr. White testified that the "larger parcel" to be considered for the before and after analysis

is an area consisting of 576.05 acres.[120] The 576.05 acres is divided by a levy leaving

approximately 324 acres in the north and approximately 251 acres in the south.[121] When asked if

he could walk through his "larger parcel analysis" Mr. White had the following to offer:

> A       Well, you know, it starts with the property that's being impacted, looking
> at the property that it impacts. As we know that there's a unity of ownership on the
> property to the north and the south. These two properties are part of a larger
> development plan that will serve the Shary West development. They're part of that
> development. But they're also bound by, you know, roadways and – and physical
> – physical things that – that section it off. So I looked at, you know, the physical,
> the legal, the ownership, and that instructed the larger parcel to be analyzed and
> appraised out of which the part taken as a part to be this 576.05 acres.[122]

When asked how Mr. White determined that the northern and southern portions make up

one parcel for the "larger parcel" analysis, Mr. White had the following to offer:

> A       Well, my understating in discussions with the – the owners and
> representative of the owners about the development plans for the site, that they're
> – that they're to be integrated uses ultimately to serve a larger development. That
> was a major consideration in understanding how they would do that and how
> they're connected. So – so that's generally probably the more overarching reason.
> And they're physically, you know, connect [sic].[123]

After stating that the northern and southern portions being planned to serve a larger

development, Mr. White was then asked why the entire 3,500+ acres did not constitute his "larger

parcel." The following is the relevant testimony:

> Q       Okay. So – so if you determined that the intended use of the land was to
> serve a larger development, why is the larger development not your larger parcel?
>
> A       Well, again, because this – this sites physically separated by roads and
> highways and it's a contiguous tract and an integrated tract that's of common
> ownership. I do reserve the right to, you know, potentially investigate the impacts
> of this taking on the broader development, but at this time, you know, I focused my

---

[120] Dkt. No. 33-3 at 46.
[121] *Id.* at 50.
[122] *Id.* at 47.
[123] *Id.* at 51.

attention on this 576 acres as being a tract of land that could be sold by a willing seller and willing buyer as one unit because of its integrated use, its common ownership. Those things.

Q      So – so wouldn't it have – if – if its intended use is to serve the larger development, would that not have the same intended use as the larger development?

A      Well, you haven't asked me what the – the – my determination of highest and best use is, but certainly this would be mixed-use development in accordance and in conjunction with the larger development.

Q      And would this be contiguous to the larger development?

A      No.

Q      Why is that?

A      I mean, we're separated by in some respect roads and highways. It's part of that development via ownership. I mean, the property is – is owned in the larger development tract. The 3600 acres is owned in various interests that are all controlled by – by David Killiam. So he has the ability to – to dictate what happens on these relative to the zoning and the TIRZ and the things that are in place across though [sic] 3600 acres.

So it's part of that development. It's always been proposed and planned to be developed with that, but it – it can stand on its own with an independent tract and that's why it shows the larger parcel that I did.[124]

As a reminder, in ascertaining what constitutes the parent tract or larger parcel, "[t]hree factors are particularly helpful in ascertaining whether property taken is part of a single, larger tract: physical contiguity, unity of ownership, and unity of use."[125] While, "[i]ntegrated use is the key test of a tract,"[126] here, both sides agree that the 3,500 acres is mixed-use development. Mixed-use means just that. Thus, some land might be developed commercially, some residential and some recreational.[127] Here, Mr. White testified that the integrated use of his chosen "larger parcel" is consistent with the mixed-use development of 3,500+ acres owned by Defendant, but he segregated a smaller parent parcel based on certain geographic factors. Having reviewed his

---

[124] *Id* at 51-53.
[125] *8.41 Acres of Land*, 680 F.2d at 393.
[126] *Id.*
[127] Perhaps some may ever remain farmland.

opinions as a whole, the Court finds his opinions sufficiently reliable and based on appropriate data to be admissible for consideration by a jury.

### ii. Joshua M. Korman

Similar to Mr. White, Mr. Korman divided his assessment of the "larger parcel" into a northern tract consisting of 332.045 acres[128] and a southern tract consisting of 251.8 acres[129] for a total of 583.845 acres. When asked if he could walk through his larger parcel analysis, Mr. Korman concentrated on the "size and shape of the property"[130] along with "historical use of the property."[131] Futher, Mr. Korman discusses that the actual use on the date of value for both the northern and the southern tracts was either "in a raw state, or was being farmed."[132]

While neither expert sets out a specific set of factors used to segregate the smaller "larger parcel" from the full 3500+ acres, the Court finds both of Defendant's experts sufficient to be submitted to the jury for consideration.[133] Accordingly, the "United States' Motion to Exclude in Part, Expert Testimony of Matthew G. White & Joshua M. Korman Regarding Tract RGV-MCS-3003"[134] is hereby **DENIED**.

### 3. Demand for Jury Trial

Defendant filed a demand for jury trial on September 21, 2020.[135] In the Parties' "Joint Notice Regarding Consent of Determining Just Compensation," the Parties request an evidentiary hearing on the issue of just compensation. However, "[t]he United States consents to a bench trial wherein the Court determines compensation based on the testimony and documentary evidence

---

[128] Dkt. No. 33-5 at 45.
[129] *Id.* at 48.
[130] *Id.* at 43.
[131] *Id.* at 44.
[132] *Id.* at 47-48.
[133] *See 8.41 Acres of Land*, 680 F.2d at 393 ("When applicable, the issue of unity or separateness of tracts is a question of fact to be presented to the trier of fact.").
[134] Dkt. No. 33.
[135] Dkt. No. 11.

presented to the Court" while "Defendant requests a jury trial where a jury determines compensation based on the testimony and documentary evidence presented to the jury.[136] The Court must therefore "determine whether the evidence is sufficient to order a jury trial if one is requested."[137]

Under Federal Rule of Civil Procedure 71.1(h)(1)(B), "the court tries all issues, including compensation, except when compensation must be determined . . . by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission." However, no party has a right to a jury trial.[138] Nevertheless, referral of an eminent domain case to a commission is the exception; jury trial is the rule.[139] "[I]f an owner's evidence is sufficient to survive the preliminary judicial screening, it then falls to the trier of fact to decide upon all the evidence and under proper instructions" what the highest and best use of the property is and therefore what value it holds and what would be just compensation for its taking.[140]

In light of the presumption for jury trial and Defendant's timely demand for a jury trial,[141] the Court **GRANTS** Defendant's request for a jury trial.[142] Having conducted its preliminary screening function,[143] the Court holds that Defendant's appraisals[144] challenge the United States' appraisals[145] and thereby create an issue for the jury as the trier of fact.

---

[136] Dkt. No. 27.
[137] Dkt. No. 11.
[138] *Ga. Power Co. v. 138.30 Acres of Land*, 596 F.2d 644, 647 (5th Cir. 1979), *aff'd sub nom. Ga. Power Co. v. Sanders*, 617 F.2d 1112, 1113 (5th Cir. 1980) (en banc).
[139] *United States v. Leavell & Ponder, Inc.*, 286 F.2d 398, 408 (5th Cir. 1961) (citing *United States v. Buhler*, 254 F.2d 876, 879 (5th Cir. 1958) & *United States v. Theimer*, 199 F.2d 501 (10th Cir. 1952)).
[140] *United States v. 320.0 Acres of Land, more or less in Monroe Cnty.*, 605 F.2d 762, 820 (5th Cir. 1979).
[141] Dkt. Nos. 47, 27–29, 31, 82–84.
[142] Dkt. No. 11.
[143] *Cf. 320.0 Acres of Land*, 605 F.2d at 819 n.130.
[144] Dkt. No. 29. *See also United States v. 5.65 Acres of Land in Starr Cnty.*, No. 7:08-cv-202, 2020 WL 5105206, at *9–10 (S.D. Tex. Aug. 31, 2020) (Alvarez, J.) (denying a motion to exclude a landowner's expert from jury trial because the appraisals satisfied reliability standards and holding that a jury should decide between conflicting expert opinions).
[145] Dkt. No. 31.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **DENIES** Defendant Cascade Real Estate Operating, LP's "Daubert Challenge and Motion to Exculde [sic] Testimony of Steve Robinson"[146] and **DENIES** Plaintiff "United States' Motion to Exclude, in Part, Expert Testimony of Matthew G. White & Joshua M. Korman Regarding Tract RGV-MCS-3003."[147]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 22nd day of February 2022.

_____
Micaela Alvarez
United States District Judge

---

[146] Dkt. No. 30.
[147] Dkt. No. 33.